IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JOEY RAY SMITH, AIS # 170129, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:12-CV-125-WKW |
| | ) | [WO] |
| KIM T. THOMAS, RICHARD | ) | |
| ALLEN, JOHN R. COOPER, JOE | ) | |
| MCINNES, JOHN ADAMS, PETE | ) | |
| ALLEN, JOHNNY PURIFOY, | ) | |
| and EDDIE GREGORY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joey Ray Smith is an inmate in the Alabama Department of Corrections ("ADOC") system who participated in a work release program allowing him to work for the Alabama Department of Transportation ("ADOT"). Plaintiff filed suit arising out of two workplace incidents. After ruling on the first round of motions to dismiss (Doc. # 27), the court allowed Plaintiff to amend his complaint, which alleges various federal and state law claims.

The second round of motions to dismiss is now before the court. Both the ADOC and the ADOT Defendants[1] have filed motions to dismiss Plaintiff's amended

---

[1] Defendants Kim T. Thomas, Richard Allen, and Pete Allen, the "ADOC Defendants," are current or former ADOC employees. Defendants John R. Cooper, Joe McInnes, John Adams, Johnny Purifoy, and Eddie Gregory, the "ADOT Defendants," are current or former

complaint.  (Docs. # 29, 31.)  Plaintiff responded in opposition.  (Doc. # 34.)  After careful consideration of the arguments of counsel and the relevant law, the court finds that the ADOC Defendants' motion is due to be granted, while the ADOT Defendants' motion is due to be granted in part and denied in part.

## I.  JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. §§ 1331, 1343, 1367, and 2201.  The parties do not contest personal jurisdiction or venue, and allegations sufficiently support both.

## II.  STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the legal standard articulated by Rule 8:  "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss brought under Rule 12(b)(6), a complaint must contain sufficient factual allegations, "accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While detailed factual allegations are unnecessary, the standard demands "more than labels and conclusions," something beyond a "formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  It is not

---

ADOT employees.

enough for a plaintiff to allege that he is entitled to relief; he must plead facts that "permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679.

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). The court need not, however, accept a plaintiff's legal conclusions. *Iqbal*, 556 U.S. at 663.

## III.  BACKGROUND

Plaintiff is an inmate at the Decatur, Alabama Community Based Facility. There, Plaintiff participates in a work-release program through which he works for Southern Energy Homes. At the time of the events forming the basis of his complaint, Plaintiff was an inmate at ADOC's Work Release Center in Camden, Alabama, and worked for ADOT out of its Greenville, Alabama facility.

## A.  The Chainsaw Incident

In February 2010, Defendant Purifoy was supervising the ADOT project where Plaintiff was working. Defendant Purifoy instructed Plaintiff to cut trees off an ADOT-maintained roadway using a chainsaw. Plaintiff had received no training in the use of chainsaws and informed Defendant Purifoy of this fact. Plaintiff also

requested safety equipment available at a Greenville ADOT facility, specifically leg chaps and safety glasses.  Defendant Purifoy apparently ignored his request.

Fearing discipline or removal from the work release program if he refused, Plaintiff began using the chainsaw to clear small trees and underbrush from the roadway.  The crew was working on a slope lined with rocks.  Shortly after he began clearing the area, Plaintiff fell backward while operating the chainsaw.  His tailbone bore the brunt of his fall, but his thigh got the worst of the still-running chainsaw.  Hours later, Plaintiff received treatment at a hospital in Greenville, Alabama, including stitches for the cut on his leg and a prescription for antibiotics.

## B.    The Traffic-Flagging Incident

Two months after the chainsaw incident, in April 2010, Plaintiff was again on work release to ADOT.  This time, Defendant Gregory was the supervisor and ordered Plaintiff to stand in the middle of the inside lane on Interstate 65 with a hand flag, directing traffic as others did road work ahead of him.  No signs alerted oncoming traffic that there were workers ahead; Plaintiff's flag would be the first clue to motorists that Plaintiff and others were in the roadway.  Plaintiff again voiced his safety concerns, but Defendant Gregory dismissed them and later issued Plaintiff two disciplinary citations for insubordination.  Though Plaintiff was acquitted on both

citations at a hearing, after this incident he could not return to work at the Greenville
ADOT facility due to a "conflict of interest." (Am. Compl. ¶ 49.)

## C.     The Amended Complaint

The Amended Complaint alleges Defendants, acting in their individual and
official capacities, violated Plaintiff's Eighth and Fourteenth Amendment rights
(Counts I and II),[2] neglected to prevent a conspiracy under and did engage in a
conspiracy under 42 U.S.C. §§ 1985(3) and 1986 (Counts III and IV), and committed
the state law tort of wantonness (Count V).  In addition to Defendants Purifoy and
Gregory, Plaintiff names six other Defendants, including three senior ADOC officials
and three superiors of Purifoy and Gregory at ADOT.  The Amended Complaint
alleges these other Defendants "intentionally did not try to prevent the reckless
conduct of Defendants Purifoy and Gregory" and "engaged personally through
policies that subjected Plaintiff to deprivations" of his constitutional rights.  (Am.
Compl. ¶¶ 15, 96.)  Plaintiff seeks compensatory and punitive damages, a declaratory
judgment, and an injunction so that he will no longer have to endure unsafe working
conditions.

_____

[2]  Like their predecessors in Plaintiff's first complaint, Counts I and II appear to be
claims brought under 42 U.S.C. § 1983.  The court will treat them as such, though a represented
plaintiff's pleadings are not entitled to the same liberal construction as those of a *pro se* plaintiff.
*Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] pro se complaint, however inartfully pleaded,
must be held to less stringent standards than formal pleadings drafted by lawyers[.]" (internal
quotations omitted)).

# IV.  DISCUSSION

Even in his second effort, Plaintiff's complaint amounts to a nearly incomprehensible maze of allegations against eight defendants.  Defendants have done little to clarify the situation.  Between them, Defendants filed two motions to dismiss, and much of their briefing consists of boilerplate arguments apparently copied-and-pasted from other filings.  (*See* Doc. # 30 at 8 (referring, by name, to a party not involved in this case); Doc. # 30 at 12 (referencing a finger injury); Doc. # 31 ¶ 5 (advocating dismissal of claims against ADOT, though Plaintiff did not name ADOT as a defendant).)  With little help from the parties, the court will "take a firm hand and whittle [the case] down," as there appears nothing to gain from further delay.  *See Chapman v. AI Transp.*, 229 F.3d 1012, 1027 (11th Cir. 2000) (discussing the appropriate response to shotgun pleadings).

## A.    Section 1983 Claims

To establish Section 1983 individual liability, a plaintiff must demonstrate that (1) a defendant deprived the plaintiff of a right secured by the United States Constitution, and (2) a defendant committed the act or omission causing the deprivation while acting under color of state law.  *Almand v. DeKalb Cnty.*, 103 F.3d 1510, 1513 (11th Cir. 1997).  Plaintiff brings two § 1983 claims, one alleging a violation of the Fourteenth Amendment and another alleging a violation of the Eighth

Amendment.  Both claims name each Defendant[3] and rest on the same two sets of facts – the chainsaw incident and the traffic-flagging incident.  Only one claim survives, and it survives against only two Defendants.

1.    Fourteenth Amendment Claim

Plaintiff's Fourteenth Amendment claim, Count I, adds nothing to his Eighth Amendment claim, and the facts of this case are properly analyzed under the Eighth, rather than the Fourteenth, Amendment.  For inmates, "the Due Process Clause affords . . . no greater protection than does the Cruel and Unusual Punishments Clause." *Whitley v. Albers*, 457 U.S. 312, 327 (1986).  The Eighth Amendment explicitly protects prisoners against cruel and unusual punishment, and its protection for convicted prisoners is coextensive with that of the Fourteenth Amendment.  *Jordan v. Cobb Cnty.*, 227 F. Supp. 2d 1322, 1335 (N.D. Ga. 2001).  Thus, Count I is due to be dismissed.  *See Lee v. Sikes*, 870 F. Supp. 1096, 1101 (S.D. Ga. 1994) (rejecting an inmate plaintiff's separate substantive due process claim and analyzing only the

---

[3]  In its order on the first round of motions to dismiss, the court dismissed with prejudice Plaintiff's official capacity claims seeking monetary damages.  (*See* Doc. # 27 at 9.)  To the extent Plaintiff has attempted to raise them again, official capacity claims for monetary damages are due to be dismissed.  The Eleventh Amendment bars suit against state officials sued for damages in their official capacity.  *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).  ADOT and ADOC employees are state officials entitled to Eleventh Amendment immunity for claims brought against them in their official capacity.

cruel and unusual punishment claim where both claims arose from the same prison workplace injury).

2.    Eighth Amendment Claim

Prison work assignments are "conditions of confinement subject to scrutiny under the Eighth Amendment." *Id.* at 1099 (citing *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993)); *see also Ort v. White*, 813 F.2d 318, 321 (11th Cir. 1987) ("Eighth amendment principles apply not only to judicially imposed punishments, but also when conditions of confinement constitute the punishment at issue.").  Thus, a plaintiff alleging constitutional violations arising from prison workplace conditions must show a "sufficiently serious" constitutional deprivation and that officials were deliberately indifferent to plaintiff's health or safety.  *Buckley v. Barbour Cnty.*, 624 F. Supp. 2d 1335, 1344 (M.D. Ala. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted)).  To be deliberately indifferent, a defendant must have been aware of facts from which one could draw a reasonable inference that a substantial risk of serious harm exists and must have actually drawn that inference. *Farmer*, 511 U.S. at 837.

a.    Defendants Purifoy and Gregory

At this stage, Plaintiff's allegations are sufficient to allow his Eighth Amendment claim to go forward against Defendants Purifoy and Gregory.  As to the

first element of deliberate indifference, "[a]llowing inmates to use equipment such as chainsaws without training in equipment operation safety raises a substantial risk" of serious harm. *Buckley*, 624 F. Supp. 2d at 1345. Similarly, asking an inmate to stand in the middle of an inside lane on an interstate – where cars routinely travel at speeds at or above 70 miles per hour, and without signs warning oncoming traffic that an individual operating a flag is ahead – would create a substantial risk of serious harm.

Plaintiff's allegations also satisfy the second element of deliberate indifference. Whether a party had the requisite knowledge of a substantial risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842 (internal citation omitted). Just as in *Buckley*, where an inmate was injured using a chainsaw under similar circumstances, "[t]he risk to inmates from failure to train in this case was obvious." 624 F. Supp. 2d at 1345. The danger posed by using such equipment without training or proper gear is obvious. The danger posed by standing on an interstate highway with nothing warning oncoming traffic of workers' presence is similarly obvious and permits a similar inference with respect to Defendant Gregory. Even if the dangers were not obvious, Plaintiff alleges he voiced his safety concerns in both instances. Thus, both Purifoy and Gregory were aware of circumstances

9

giving rise to inferences of substantial risk.  The obviousness of the risks suggests they actually drew those inferences.

Nor is Defendant Purifory or Defendant Gregory entitled to qualified immunity at this stage of the proceeding.  Qualified immunity protects government officers performing discretionary functions from suit so long as their conduct does not violate a plaintiff's clearly established constitutional rights.  *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001).  "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable officer would understand what he is doing violates that right.'"  *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Three sources of law put a government official "on notice of . . . constitutional rights:  specific . . . constitutional provisions; principles of law enunciated in relevant decisions; and factually similar cases already decided by state and federal courts in the relevant jurisdiction."  *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1330 (11th Cir. 2007) (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1351–52 (11th Cir. 2002)).  While most judicial precedents fall into the third category, *Vinyard*, 311 F.3d at 1351–52, general statements of law may also give "fair and clear warning, and in other instances, a general constitutional rule already identified in the decisional law may apply with

obvious clarity to the specific conduct in question," whether a court has held the very action in question unlawful.  *Hope*, 536 U.S. at 741.

Despite the arguments of Defendants Purifoy and Gregory to the contrary, if Plaintiff's allegations are proven true, they would amount to violations of his clearly established constitutional rights.  Eighth Amendment jurisprudence gives rise to a general constitutional rule:   "[T]reating inmates with deliberate indifference constitutes an Eighth Amendment violation, whether . . . an inmate is physically within the prison." *Buckley*, 624 F. Supp. 2d at 1350 (citing *Farmer*, 511 U.S. at 837, and *Hope*, 536 U.S. at 733–34).  Directing an inmate to use a chainsaw to remove brush from a rock-lined slope, knowing that he felt uncomfortable with the equipment if not that he was untrained, gives rise to an Eighth Amendment claim.  This court has so held before. *See Buckley*, 624 F. Supp. 2d at 1350 ("A supervisor directing inmates to cut down a precariously positioned tree with chainsaws and knowing that at least one of them felt uncomfortable with the equipment – if not, that the inmate was untrained in violation of regulations – is a cognizable Eighth Amendment claim."). And though the alleged facts of the traffic-flagging incident are distinguishable, the constitutional rule against deliberate indifference similarly prohibits directing an inmate to stand in the middle of an interstate highway without signs warning

oncoming traffic of his presence.  Defendants Purifoy and Gregory are not entitled to qualified immunity at this stage.

      b.  Supervisory Defendants

Plaintiff's Section 1983 claim against other Defendants, however, cannot go forward.  A supervisor may be held liable under Section 1983 when he participates in the alleged constitutional violation or when there is a causal connection between his actions and the violation.  *Valdes v. Crosby*, 450 F.3d 1231, 1236 (11th Cir. 2006). Here, there is no allegation that any Defendant besides Johnny Purifoy or Eddie Gregory personally participated in the chainsaw incident or the road-flagging incident, nor is there any allegation that Defendants Purifoy or Gregory were following specific direction from other Defendants when they subjected Plaintiff to substantial risks of serious bodily injury.  *See id.* at 1236–37 (stating circumstances under which supervisors may be liable for Section 1983 violations).

Additionally, Plaintiff fails to allege a plausible causal connection between his injuries and the acts of any Defendant besides Johnny Purifoy and Eddie Gregory.  A causal connection supporting supervisory liability under Section 1983 exists "when: 1) a history of 'widespread abuse' puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so; 2) a supervisor's custom or policy results in deliberate indifference to constitutional rights; or 3) facts

support an inference that the supervisor directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them from doing so." *Id.* at 1237 (quoting *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003)).

With respect to the chainsaw incident, Plaintiff's factual allegations against other Defendants consist of conclusory statements alleging breached "duties." (*See* Am. Compl. ¶ 79.) There are no factual allegations that the supervisory Defendants were aware of a history of widespread abuse, or even that there was a history of widespread abuse,[4] nor are there allegations supporting an inference that supervisors directed or tacitly endorsed Defendant Purifoy to act the way he did. The allegations regarding the traffic-flagging incident are even less specific and mostly lumped in with the chainsaw incident. Conclusory assertions that certain Defendants "intentionally did not try to prevent" (Am. Compl. ¶ 91) or are "presumed to have personally condoned" (Am. Compl. ¶ 113) the actions of Defendants Purifoy and Gregory are insufficient.

---

[4] In his brief opposing Defendants' motions to dismiss, not in his complaint, Plaintiff does cite the case of one other inmate in Alabama who brought suit alleging constitutional violations from injuries sustained while working with a chainsaw. (Doc. # 35 at 4 (discussing *Buckley*, 624 F. Supp. 2d 1335).) That case did not involve ADOT, ADOC, or employees of either entity. *Buckley*, 624 F. Supp. 2d at 1340. Assuming without deciding that one incident within the *same* system would be enough to allege "widespread abuse," the court finds that one incident in a *different* system and not cited in the complaint does not amount to such an allegation.

Nor is it sufficient for Plaintiff simply to recite the elements of a claim like an incantation. Plaintiff alleges that certain Defendants "exhibited reckless and deliberate indifference to the Plaintiff's life by not personally supervising their subordinate employees" and "engaged personally through policies" subjecting Plaintiff to a deprivation of his constitutional rights. (Am. Compl. ¶¶ 82, 96.) But Plaintiff fails to state any facts that make his allegation of such policies or customs plausible. While the court would accept factual allegations making an allegation of deliberate indifference plausible, the court will not accept Plaintiff's wholly unsupported legal conclusions. *Iqbal*, 556 U.S. at 663.

Comparison to another Section 1983 case alleging an Eighth Amendment violation is instructive. In *McCreary v. Parker*, the personal representative of an inmate's estate brought suit against several corrections officers and the county sheriff after the inmate died in the county jail at the hands of his cellmate. 456 F. App'x 790, 793 (11th Cir. 2012). The supervisory liability claim against the sheriff survived because the plaintiff's allegations satisfied the standard articulated in *Valdes*. *Id.* at (citing *Valdes*, 450 F.3d at 1237). The plaintiff alleged the sheriff was aware of a rapid increase in inmate-on-inmate violence in the overcrowded facility, that he received a report from an expert on jail overcrowding about the causes of poor conditions at the jail, and that he housed inmates who were in disciplinary or

administrative holding together despite warnings such mixing was "a recipe for disaster." *Id.* The plaintiff also alleged that the sheriff publicly "admitted that the jail was dangerous due to overcrowding" and that inmates had informed the sheriff that corrections officers housed certain inmates together "to increase the likelihood of violence." *Id.* Such allegations satisfied the Rule 8 standard. *Id.* at 791–92.

Plaintiff, by comparison, does not allege facts from which one could reasonably infer that any of the ADOC Defendants or Defendants Cooper, McInnes,[5] or Adams were deliberately indifferent to Plaintiff's health or safety. He alleges only legal conclusions, and therefore his claims against the supervisory Defendants fail.[6]

---

[5] Plaintiff never perfected service of process on Mr. McInnes. (Doc. # 12.) Thus, any claim against him would have to clear the hurdle imposed by Federal Rule of Civil Procedure 4(m). However, because the claim does not pass muster under Rule 8, ordering that service be made within a specified time would be futile.

[6] The supervisory Defendants also argue that qualified immunity protects them, but it is unnecessary to reach qualified immunity because Plaintiff's allegations of a constitutional violation are insufficient. *Carter v. Galloway*, 352 F.3d 1346, 1350 n.10 (11th Cir. 2003).

**B.     Section 1985(3) and 1986 Claims**[7]

Plaintiff's claims under 42 U.S.C. § 1985(3) fail because there is no allegation of qualifying discriminatory animus.  The elements of a cause of action under Section 1985(3) are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott*, 463 U.S. 825, 828–29 (1983).

Both the Supreme Court of the United States and the Eleventh Circuit Court of Appeals have interpreted the second element to require race-, sex-, or an "otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 101 (1971); *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1337 (11th Cir. 1997) ("*Lyes II*") (quoting *Griffin*).  Plaintiff alleges no comparable class-based animus.

Plaintiff argues Defendants harbored animus against him because he is a

---

[7]  In Count IV, Plaintiff alleges that "each of the Defendants . . . exhibit[ed] a personally total reckless and indifferent hostility toward the Plaintiff" and "caused [him] severe emotional distress which prevents him [from] performing work release assignment without fear for his life."  (Am. Compl. ¶ 112 (including a heading that reads "Intentional Infliction of Emotional Distress 42 USCS § 1985(3) Invidiously Discriminatory Animus").  Neither Plaintiff nor Defendants have addressed this claim in briefing as including a separate state law claim for intentional infliction of emotional distress.  Accordingly, the court will treat it, as the parties apparently have, as a claim under 42 U.S.C. § 1985(3).

convicted felon.  (Am. Compl. ¶ 107.)   Unlike race and sex, however, being a

convicted felon is not "an immutable characteristic determined solely by the accident

of birth."  *Frontiero v. Richardson*, 411 U.S. 677, 686 (1973); *see also Lyes v. City*

*of Riviera Beach*, 126 F.3d 1380, 1390 (11th Cir. 1997) (quoting *Frontiero*), *vacated*

*by Lyes II*, 166 F.3d at 1335 (holding that Section 1985(3) prohibits conspiracies

based on sex as well as race).  Animus against convicts as a class therefore seems

unlikely to be animus of the sort contemplated by the drafters of Section 1985(3).

Because Plaintiff alleges no qualifying class-based animus, he fails to state an

actionable Section 1985(3) claim.  Additionally, to the extent Plaintiff raises a Section

1986 claim, that claim is also due to be dismissed as Section 1986 claims are

derivative of Section 1985 violations.  *Park v. City of Atlanta*, 120 F.3d 1157,

1159–1160 (11th Cir. 1997).

## C.    State Law Claim for Wantonness

In addition to his federal law claims, Plaintiff also raises a state law claim

against Defendants in their individual capacity[8] alleging wantonness. (Am. Compl.

¶¶ 116–124.)   "Wantonness is not merely a higher degree of culpability than

---

[8] To the extent Plaintiff attempts to bring state law claims for damages against
Defendants in their official capacities, his claims are barred.  "A complaint seeking money
damages against a State employee in his or her official capacity is considered a complaint
against the State, and such a complaint is barred by Art. I, § 14, Alabama Constitution of 1901."
*Ex parte Butts*, 775 So. 2d 173, 177 (Ala. 2000).

negligence." *Ex parte Essary*, 992 So. 2d 5, 9 (Ala. 2007) (internal quotations omitted).   While inattention or lack of due care characterizes negligence, consciousness characterizes wantonness.   *Id.*   Wanton acts exhibit "reckless indifference to a known danger likely to inflict injury." *Id.* at 12.   Thus, the pleading requirements for Plaintiff's state law claim for wantonness mirror those for his Eighth Amendment claims.   Where the Eighth Amendment claims require that Plaintiff plead facts making deliberate indifference to human health and safety plausible, the wantonness claim requires facts making reckless indifference plausible.

As with his Eighth Amendment claims, Plaintiff's pleadings satisfy the Rule 8 standard as against Defendants Purifoy and Gregory, but not against the other Defendants.   Plaintiff alleges that Purifoy and Gregory, "consciously and with knowledge of the dangerous conditions, personally endangered [Plaintiff's] life," and importantly, Plaintiff alleges facts making that allegation plausible.  Taking Plaintiff's allegations as true, the obviousness of the dangers posed by the use of a chainsaw and flagging traffic on an interstate highway, along with Plaintiff actually expressing his concern for his safety, support an inference that Defendants Purifoy and Gregory were conscious of the dangers posed and nonetheless subjected Plaintiff to them.[9]

---

[9]  Nor is Defendant Purifoy or Gregory entitled to state-agent immunity at this stage. State-agent immunity is unavailable "upon a showing that the State agent acted willfully, maliciously, fraudulent, in bad faith, or beyond his or her authority." *Giambrone v. Douglas*, 874 So. 2d 1046, 1057 (Ala. 2003).  This showing would require the court to examine evidence,

But just as Plaintiff's Eighth Amendment claims against the supervisory Defendants are implausible, so too is his wantonness claim.  Plaintiff's pleadings on wantonness consist mostly of legal conclusions.   Plaintiff alleges that certain Defendants "were wanton when they personally neglected to enforce the safety rules and regulations of their respective departments," without alleging facts that make it plausible they had any consciousness of the danger posed to Plaintiff or others similarly situated.   (Am. Compl. ¶ 119.)   He alleges no facts that would put Defendants on notice of such a danger.  *See supra* Part IV.A.2.b. (analyzing the plausibility of Plaintiff's Eighth Amendment claims against the supervisory Defendants and dismissing them based on the lack of supporting factual allegations).

## D.     Injunctive Relief

Plaintiff lacks standing to seek injunctive relief against Defendants.   "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974); alterations omitted).   Plaintiff may have endured constitutional violations at the hands of Defendants Purifoy and Gregory in

---

but at this stage, the court cannot venture outside the four corners of the complaint. Accordingly, Defendants' motion to dismiss the individual-capacity, state law claims based on state-agent immunity is due to be denied.

19

February and April 2010, and those alleged violations afford standing to claim damages.  But that "does nothing to establish a real and immediate threat" that Plaintiff might again endure such violations.  *Lyons*, 461 U.S. at 105.

Plaintiff is now housed at an ADOC facility in Decatur, Alabama, and is assigned to the work release program at Southern Energy Homes.  Plaintiff's own complaint states that he cannot return to work at the Greenville ADOT facility due to a "conflict of interest."  (Am. Compl. ¶ 49.)  Thus, the threat of future injury is "conjectural or hypothetical," and Plaintiff lacks standing to seek injunctive relief.  *Lyon*, 461 U.S. at 102.

## V.  CONCLUSION

It is ORDERED that the Motion to Dismiss filed by the ADOC Defendants (Doc. # 29) is GRANTED.  All of Plaintiff's claims against Defendants Kim T. Thomas, Richard Allen, and Pete Allen are DISMISSED with prejudice.

It is further ORDERED that the Motion to Dismiss filed by the ADOT Defendants (Doc. # 31) is GRANTED in part and DENIED in part.  The motion to dismiss is GRANTED and the claims DISMISSED with prejudice as to:

(1)   Count I;

(2)   Count II as against Defendants John R. Cooper, Joe McInnes, and John Adams;

(3)     Count III;

(4)     Count IV; and

(5)     Count V as against Defendants John R. Cooper, Joe McInnes, and John

Adams;

(6)     Plaintiff's claim for injunctive relief.

In sum, only Counts II and V remain against Defendants Johnny Purifoy and

Eddie Gregory in their individual capacities.

DONE this 4th day of March, 2013.

_____/s/ W.  Keith Watkins_____

CHIEF UNITED STATES DISTRICT JUDGE